E-FILED
Friday, 16 October, 2020  04:20:47 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-30079 |
| | ) | |
| DELBERT MARSHALL, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, United States District Judge:

Delbert Marshall has filed an Amended Motion for Compassionate Release.

Marshall seeks compassionate release based on the proliferation of COVID-19 at FCI Greenville combined with the exponential growth of the disease at Bureau of Prisons ("BOP") locations around the country, in addition to the Defendant's pre-existing health conditions that may place him at high risk for severe illness and/or death if he contracts the virus.

The Government claims the Defendant does not fit the requirements for compassionate release.

## I.    BACKGROUND

On April 10, 2006, the Defendant was sentenced to 420 months' imprisonment.  This term consisted of 240 months on Counts 1 and 2, Distribution

of Cocaine; 360 months on Count 3, Distribution of Cocaine Base "Crack" within 3,000 Feet of School; 360 months on Count 4, Possession of Cocaine and At Least 5 Grams of Cocaine Base "Crack" With Intent to Distribute Within 1,000 Feet of School; 120 months on Count 5, Felon in Possession of a Firearm; and 60 months on Count 6, Possession of a Firearm in Furtherance of Drug Trafficking.  He was also ordered to serve an 8-year term of supervised release.

The Defendant's imprisonment term has since been reduced due to retroactive guideline changes or changes in law.  On February 24, 2020, the Defendant's sentence was reduced to 180 months imprisonment on Counts 1 through 4, all counts concurrent; 60 months on Count 6 to run consecutive to Counts 1 through 5; and the sentence on Count 5 remains unchanged.  The Defendant's supervised release term was reduced to 6 years.

The Defendant, who is a 42-year old black male, is incarcerated at FCI Greenville, a medium security institution, with a scheduled release date of November 28, 2022.  His home detention date is May 28, 2022.

The Government states that Defendant has HIV, which compromises his immune system and places him at higher risk for serious side effects should he contract COVID-19.   Based on that condition, the Government claims that Defendant has established extraordinary and compelling reasons for his release.  However, the medical records show that Defendant tested negative for HIV in

2

September 2017 and in 2018.  It does not appear that his medical records show any positive HIV tests.

The Defendant's motion provides that he suffers from hypertension, for which he takes daily medication, which has been identified by the CDC as a chronic health condition that might place him at increased risk should he contract COVID-19. www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions (last visited October 14, 2020).  He has recently been diagnosed as pre-diabetic, with an A1C level of 5.9.  The Defendant was also born with *pectus excavatum*, which is a structural deformity of the thoracic wall in which the chest plate grows inward; commonly called "funnel chest," the sternum and ribcage are abnormally shaped, which limits lung capacity and can result in fatigue or inability to exercise, coughing palpitations, or shortness of breath, and can lead to serious cardiac symptoms.  *See* Ron Winkens, et al., *Pectus Excavatum, Not Always as Harmless as it Seems*, BMJ Case Rep. (Dec. 14, 2009), www.ncbi.nlm.nih.gov/pmc/articles/PMC3029481; and Mayo Clinic, *Pectus Excavatum: Not Just a Cosmetic Concern* (Oct. 3, 2017), www.mayoclinic.org/medical-professionals/cardiovascular-doseases/news/pectus-excavatum-not-just-a-cosmetic-concern/mac-20430716.

The Defendant was hospitalized for having an irregular heartbeat in 2017.  The records show that he was evaluated in December 2017 for chest pain, fatigue,

irregular heartbeat, prior tobacco use, shortness of breath and hypertension. Although testing did show an "enlarged right ventricular cavity," further testing and assessment that was later conducted by BOP showed normal ventricular size and function.

The Government states that, even assuming the Defendant can establish extraordinary and compelling reasons for his release, his request should be denied because he presents a danger to the community if released.

According to the Bureau of Prisons ("BOP") website, 126 inmates and two BOP staff members have died of COVID-19. www.bop.gov/coronavirus (last accessed October 16, 2020). There are 1,632 federal inmates and 762 BOP staff who are currently positive for COVID-19. *Id*. Currently, 14,433 inmates and 1,231 staff have recovered. *Id*. There are 125,905 inmates at BOP-managed institutions, along with approximately 36,000 BOP staff. *Id*.

FCI Greenville has 23 inmates and six staff members who are currently positive for COVID-19. *Id*. There have not been any inmate or staff deaths due to COVID-19. *Id*. The website reports that 89 inmates and 22 staff members have recovered. *Id*. FCI Greenville has 1,249 inmates, including the 243 at the Camp. www.bop.gov/locations/institutions/for (last accessed October 16, 2020).

## II.   DISCUSSION

### (A)

Under the First Step Act signed into law by President Trump on December 21, 2018, defendants are now authorized to file motions for compassionate release after first exhausting administrative remedies within the BOP.  *See* 18 U.S.C. § 3582(c)(1)(A).  The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary" or "compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  *See*  18 U.S.C. § 3582(c)(1)(A).

The Defendant's motion represents that he made a request for compassionate release to the Warden of his facility in April 2020 and followed up on June 18, 2020. He states he has received no response.  Because the Defendant claims to have made a request to his Warden more than 30 days before the amended motion for compassionate release was filed, the Court presumes he has met the statutory exhaustion requirement.

The Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission."

18 U.S.C. § 3582(c)(1)(A).  The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions.  *See* 18 U.S.C. § 3582(c)(1)(A).

Since passage of the First Step Act, the Sentencing Guideline policy statement has not been updated to reflect that defendants (and not only the BOP) may move for compassionate release but courts have turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction.  *See United States v. Weatherspoon*, 2020 WL 3803035, at *3 (S.D. Ind. July 7, 2020) (citations omitted).  The applicable guideline instructs that the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release and the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act.  *See* U.S.S.G. § 1B1.13.  The policy statement provides examples of "extraordinary and compelling reasons" in the application notes.  These examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, or (4) compelling family circumstances.  U.S.S.G. § 1B1.13 comment. n.1 (A)-(C).  It

would not appear that Defendant cannot meet these "extraordinary and compelling reasons" which would warrant release.

The commentary also includes a fifth catch-all provision for "extraordinary and compelling reasons other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the Bureau of Prisons. The policy statement was last updated in November 2018 before the First Step Act was passed.

On April 3, 2020, the Attorney General made the finding that emergency conditions are materially affecting the functioning of the BOP, thereby allowing the BOP Director to review all inmates for home confinement. The Attorney General's Memorandum explained that "inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations." There have been calls from legal experts for the Attorney General to expand the home confinement program even further. Moreover, multiple United States Senators have recently voiced concern over BOP's attempts to curb the spread of the virus and their non-responsiveness to the call to release medically vulnerable inmates.

(B)

Certainly, the COVID-19 pandemic is in and of itself an extraordinary and unprecedented event in our lifetimes. "The spread of the novel coronavirus, more specifically COVID-19, has presented extraordinary and unprecedented challenges for the nation and poses a serious issue for prisons." *United States v. Coles*, 2020 WL 1976296, *6 (C.D. Ill. Apr. 24, 2020). The Defendant notes that BOP's infection rate is 5.02 times higher than that of the United States and it also surpasses infection rates around the world. However, "the mere existence of COVID-19 in society and possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). "Perhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020); *see also United States v. Johnson*, 2020 WL 2573239, at *4 (C.D. Ill. May 21, 2020).

The Defendant alleges that contracting the virus could result in serious illness, death or long-term health consequences for him. The virus has proliferated at FCI Greenville and the Court can consider the added risk of death. Because the danger of contracting COVID-19 while in BOP custody is real and because the Defendant

claims he is at high risk of experiencing serious complications from the disease due to his history of hypertension, pre-diabetes, possible heart defect and pectus excavatum, the Court may exercise its discretion to determine that this combination of factors present an extraordinary and compelling basis for a sentence reduction.

It is worth noting that the COVID-19 situation at FCI Greenville has worsened since the Defendant's motion was filed in August, when there were only five positive cases among inmates and staff and six individuals who had recovered.  As noted, there are now 29 positive cases among inmates and staff with 111 having recovered. The Defendant's hypertension may increase his risk of severe illness from COVID-19.  Although the Defendant's other listed conditions are not specified as enhancing the risk, the Defendant has had various cardiac issues which would appear to present at least a potential risk of severe illness were he to contract COVID-19.  Based on conditions at FCI Greenville and the Defendant's health concerns, the Court finds that he has established extraordinary and compelling reasons for his release.

(B)

If extraordinary and compelling circumstances are established, the Court should then consider the statutory sentencing factors.  Under *Pepper v. United States*, 562 U.S. 476, 490-493 (2011), the Court should consider any applicable post-offense developments under § 3553(a).

The Defendant's BOP disciplinary record consists of three serious rules violations which resulted in disciplinary actions, though none are particularly recent. The most recent violation occurred in June 2015, when the Defendant was sanctioned for fighting with another person. The other infractions for possessing intoxicants and assaulting without serious injury occurred fourteen and eight years ago, respectively.

The Defendant has served almost 182 months out of what is now an aggregate 240-month sentence, which is approximately 75% of his sentence. During his BOP term, the Defendant has worked for Unicor and earned the "all-star award." According to a Letter of Community Service from the Unicor Foreman, the Defendant in April 2020 volunteered to make 2,800 facemasks for local HSHS hospitals. The Defendant has also participated in educational and vocational programming, having completed a 225-hour small gas engine course, 125 hour automotive engine course and a Commercial Driver's License course, in addition to others. He has also participated in substance abuse treatment.

The Defendant has just over two years remaining on his sentence, which has been significantly reduced since he was sentenced in 2006. According to the Compassionate Release Memorandum prepared by the United States Probation Office, the Defendant was classified as a high-risk recidivism level on March 17, 2020. Presumably, the high-risk classification is because of the seriousness of the

six convictions in this case, in addition to the Defendant's criminal history. The Defendant had a particularly extensive criminal history for a 27-year old at the time he committed the crimes. Based on those considerations, it is likely true statistically that Defendant is a high risk to reoffend.

When the Court considers the Defendant individually, however, it is apparent that he has made some significant improvements in his life during his BOP term. The Defendant's participation in educational and vocational programs makes it more likely that he will succeed upon release, as does his substance abuse treatment. The Defendant's work with Unicor should also significantly benefit him and hopefully will ease his transition into society upon release.

The most important sentencing factors at this point are whether the sentence imposed has afforded adequate deterrence and served to protect the public from further crimes of the Defendant. Obviously, it is unknowable whether the Defendant will commit further crimes. The Defendant says he is not the same person at 42 as he was at 27. He has been in custody for over 15 years. While the Defendant does have three BOP rules violations, none are particularly recent which could suggest that he has made strides in terms of learning to follow rules. Based on these circumstances and the progress noted above, the Court finds that the record suggests he may no longer be a danger to the community. The Court will also modify the Defendant's supervised release conditions to include a term of home confinement,

which will ensure that he is closely monitored to address any issues that might arise following his release from BOP.

Before the Defendant can be released, he must have an approved release plan. The Compassionate Release Memorandum dated July 8, 2020 provides that the Probation Office was unable to contact the Defendant's father, with whom the Defendant plans to reside upon release. Therefore, the Court will withhold the entry of Judgment pending approval of a release plan for the Defendant.

### III.    CONCLUSION

Based on the number of positive COVID-19 cases at FCI Greenville and Defendant's health concerns and given that he has served most of his sentence, the Court finds that Defendant has established extraordinary and compelling reasons that warrant a reduction in the term of imprisonment, and the Court further finds that compassionate release is appropriate in this case.

Ergo, Defendant Delbert Marshall's Amended Motion for Compassionate Release [d/e 113] is GRANTED.

The Clerk will terminate the Defendant's pro se Motion for Compassionate Release [d/e 109].

The Court will withhold entry of Judgment pending approval of a release plan by the United States Probation Office.

The Court hereby reduces Defendant's term of imprisonment from a total of 240 months to time served plus 72 hours in order to allow BOP to test Defendant for COVID-19 and for Defendant to arrange transportation, once the Defendant's release plan has been approved.

The Court modifies Defendant's conditions of supervised release to require Defendant to spend six months in home confinement, with the first 14 days to be spent in isolation.  The home confinement shall start as soon as possible after his term of supervised release begins.  Defendant shall be monitored by telephonic monitoring as approved by the United States Probation Office until such time as the U.S. Probation Office is able to implement electronic monitoring.  All other aspects of Defendant's previous sentence shall remain the same.

The Bureau of Prisons is ORDERED to test Defendant for COVID-19 prior to his release.  The Bureau of Prisons shall advise the U.S. Probation Office of the results of the test and, further, the Bureau of Prisons is also ORDERED to release Defendant once he has tested negative for COVID-19 and Judgment has been entered.

The Clerk is DIRECTED to send a copy of this Order to FCI Greenville. Defendant must self-quarantine for a period of 14 days beginning at the time of his release.

The Court will enter Judgment upon learning that Defendant's release plan has been approved by the United State Probation Office.

The Clerk will send a copy of this Order to the United States Probation Office.

ENTER: October 16, 2020

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge